# IN THE UNITED STATES DISTRICT COURT FOR THE

# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID P. MADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-13-393-HE |
| | ) | |
| REGIONAL UNIVERSITY SYSTEM | ) | |
| OF OKLAHOMA, a State of Oklahoma | ) | |
| constitutionally created governing | ) | |
| board; NORTHEASTERN STATE | ) | |
| UNIVERSITY, a public university; | ) | |
| CARI KELLER, an individual (in her | ) | |
| individual and official capacity); | ) | |
| PHILLIP BRIDGMON, an individual | ) | |
| (in his individual and official capacity), | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

**DEFENDANTS' MOTION TO DISMISS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**BRIEF IN SUPPORT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF THE CASE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA AND
NORTHEASTERN STATE UNIVERSITY HAVE ELEVENTH
AMENDMENT IMMUNITY FROM ALL CLAIMS MADE BY
PLAINTIFF** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**DEFENDANTS KELLER AND BRIDGMON ALSO HAVE
ELEVENTH AMENDMENT IMMUNITY AS TO THE
CLAIMS MADE AGAINST THEM IN THEIR OFFICIAL
CAPACITY** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**PLAINTIFF HAS FAILED TO ESTABLISH A PROPERTY
INTEREST AND THEREFORE HIS CLAIMS FOR VIOLATION
OF DUE PROCESS UNDER THE CONSTITUTION MUST FAIL** . . . . . . . . . . . . . 6

**PLAINTIFF'S EQUAL PROTECTION CLAIM MUST FAIL** . . . . . . . . . . . . . . . . . 8

**DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY** . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Al Kidd,*
131 S.Ct, 2074 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Board of Education, Vici Public Schools v. Dewey,*
656 P.2d 258 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Board of Regents of State Colleges v. Roth,*
408 U.S. 564 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brandon v. Holt,*
469 U.S. 464 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Buckley Constr., Inc. V. Shawnee Civic & Cultural Dev. Autho.,*
933 F.2d 853 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Callahan v. Millard County,*
494 F.3d 891 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Coopersmith v. Supreme Court of Colorado,*
465 F.2d 993 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Edelman v. Jordan,*
415 U.S. 651 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Esmail v. Macrane,*
53 F.3d 176 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Finn v. New Mexico,*
249 F.3d 1241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Harris v. Champion,*
51 F.3d 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Howlett v. Rose,*
496 U.S. 356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Imbler v. Pachtman*
424 U.S. 409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Jannsen v. Condo,*
101 F.3d 14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Kentucky v. Graham,*
473 U.S. 159 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Klinger v. Departmnet of Corrections,*
31 F.3d 727 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Martin v. United School Dist. No. 434, Osage County, KS,*
728 F.2d 453 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Medina v. Cramm,*
252 F.3d 1124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Melton v. City of Oklahoma City,*
879 F.2d 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Murrell v. Sch. Dist. No. 1,*
186 F.3d 1238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Papasan v. Allain,*
478 U.S. 265 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pennhurst State Sch. & Hosp. V. Halderman,*
465 U.S. 89 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Pierson v. Ray,*
386 U.S. 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Quern v. Jordan,*
440 U.S. 332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Sipes v. United States,*
744 F.2d 1418 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Smith v. Eastern New Mexico Med. Ctr.,*
1995 WL 749712 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Snowden v. Hughes,*
321 U.S. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Spittal v. Piperni,*
786 F.2d 1166 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Steadfast Insurance Co. V. Agricultural Insurance Co.,*
507 F.3d 1250 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Stern v. University of Oklahoma,*
841 P.2d 1168 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Thomson v. Salt Lake Cnty.,*
584 F.3d 1304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Weeks v. Northeast Area Vo-Tech Dist. No. 11,*
657 P.2d 1205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Will v. Michigan Dept. Of State Police,*
491 U.S. 58 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 6

*Wood v. Independent School Dist. No. 141,*
61 P.2d 892 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Yerardi's Moody St. Restaurant & Lounge v. Board of Selectmen,*
878 F.2d 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Zaintz v. City of Albuquerque,*
739 F.Supp 1462 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES**

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 4, 5, 6

70 O.S. §3571.1(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

70 O.S. §3503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

# DEFENDANTS' MOTION TO DISMISS

COME NOW the Defendants, Regional University System of Oklahoma, Northeastern State University, Cari Keller and Phillip Bridgmon and, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), move to dismiss Plaintiff's Complaint for the following reasons:

1.      Defendants have Eleventh Amendment immunity;

2.      Plaintiff has failed to state a claim for violations of equal protection or due process; and

3.      Defendants have qualified immunity.

For the reasons stated above, as more fully discussed below, Defendants pray that this Honorable Court dismiss Plaintiff's Complaint and grant any other relief that the Court finds to be just and equitable.

## BRIEF IN SUPPORT

### STATEMENT OF THE CASE

Plaintiff is a professor of legal studies at Northeastern State University in Tallequah, Oklahoma ("NESU"). Plaintiff alleges that he was a tenure track professor who had superior scholarship and always received good employee evaluations. Plaintiff was non tenured and on a yearly contract with NESU. In 2013, NESU decided not to renew Plaintiff's contract for the academic year 2013-2014. Plaintiff asserts that the decision to not renew his teaching contract was due to the fact that Plaintiff had been vocal against certain university policies

and had been vocal against the possible hiring of Phillip Bridgmon's wife.[1] Plaintiff therefore asserts a retaliation claim against the Defendants alleging that the non-renewal of his contract was because of Plaintiff's exercise of his First Amendment rights in speaking out against university policies. Plaintiff also asserts that he has due process and/or equal protection rights in not having his evaluations "changed"[2], in having a neutral and detached decision maker to make determinations about faculty retention, in the university having sound decision makers and in having the university not deny his contract renewal "arbitrarily" or "capriciously". Plaintiff has sued the Defendants under 42 U.S.C. §1983 only.

Defendants are Regional University System of Oklahoma ("RUSO") and Northeastern State University ("NESU"), both of which are agencies of the State of Oklahoma and both of which have Eleventh Amendment immunity. Also sued are Cari Keller, department chair, and Phillip Bridgmon, Dean of the College of Liberal Arts, both of whom are alleged to have participated in the decision to not renew Plaintiff's contract. Ms. Keller and Mr. Bridgmon are sued in both their individual and official capacities. These Defendants assert that they have Eleventh Amendment immunity in their official capacities and further assert that Plaintiff has failed to state a claim against them for due process violations or equal protection violations. Further, the individual Defendants assert qualified immunity.

---

[1] Mr. Bridgmon was the incoming Dean of the College of Liberal Arts. Plaintiff believed that hiring Dean Bridgmon's wife would amount to unauthorized nepotism.

[2] Plaintiff alleges that when his evaluation was first conducted, he was found to meet scholarship criteria. He further alleges that this conclusion was changed in march of 2012 when the decision was made to not renew his contract the Department Chair, Ms. Keller, recommended retaining the Plaintiff.

## REGIONAL UNIVERSITY SYSTEM OF OKLAHOMA AND NORTHEASTERN STATE UNIVERSITY HAVE ELEVENTH AMENDMENT IMMUNITY FROM ALL CLAIMS MADE BY PLAINTIFF

In order for Plaintiff to invoke the jurisdiction of this Court under 42 U.S.C. §§ 1983 or 1985, he must sue a "person" as contemplated by the statute. Plaintiff, in suing RUSO and NESU, has not done this. Instead, Plaintiff has sued entities of the State. These entities are not persons and they should be granted Eleventh Amendment Immunity from this suit.

RUSO is a State of Oklahoma statutorily created governing board. 70 O.S. §3571.1(B). NESU is a statutorily created public university of the State of Oklahoma. 70 O.S. §3503. The State or an entity of the State, cannot be sued in federal court for violations of 42 U.S.C. §§ 1983 or 1985. "Neither the State, nor a governmental entity that is the arm of the State for Eleventh Amendment purposes, nor a State official who acts in his official capacity is a person within the meaning of § 1983. *Harris v. Champion*, 51 F.3d 901 (10th Cir. 1995); *Will v. Michigan Dept of State Police*, 491 U.S. 58, 70-71, 109 S.Ct. 2304, 2312 (1989). A state agency is not a person under § 1983. *Harris*, *supra*.; *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358; *Coopersmith v. Supreme Court of Colorado*, 465 F.2d 993, 994 (10th Cir. 1972). Generally, a state and its agencies are entitled to immunity under the Eleventh Amendment for actions brought in federal courts, whether the action seeks damages or equitable relief. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

3

Furthermore, for any claims brought by the Plaintiff which do not fall under 42 U.S.C. § 1983, including State torts, Defendants would still have Eleventh Amendment Immunity. The Eleventh Amendment protects states, or arms of the state, from being sued in federal court by citizens of its own state or citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662 (1974); *Steadfast Insurance Co. v. Agricultural Insurance Co.*, 507 F.3d 1250 (10th Cir. 2007).

In this case, RUSO and NESU are not persons. They are agencies of the State of Oklahoma, formed by the statutes of the State of Oklahoma. The State of Oklahoma has not waived its Eleventh Amendment Immunity in this matter. As such, they are not persons for the purpose of a § 1983 lawsuit. The State has Eleventh Amendment Immunity for all claims brought against it by the Plaintiff in this Court, and Plaintiff's case against RUSO and NESU must be dismissed.

## DEFENDANTS KELLER AND BRIDGMON ALSO HAVE ELEVENTH AMENDMENT IMMUNITY AS TO THE CLAIMS MADE AGAINST THEM IN THEIR OFFICIAL CAPACITY

Plaintiff alleges that he is suing Defendants Keller and Bridgmon in both their individual and official capacities. [Doc. 1, ¶¶7-8]. In his Complaint, Plaintiff requests money damages from these educators . [Doc. 1, p. 20]. These Defendants, in their official capacities, have Eleventh Amendment immunity from the money damages claims made by Plaintiff. A state and its employees are entitled to Eleventh Amendment Immunity in § 1983 cases. In *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court specifically considered whether a state or an official

of a state acting in his official capacity is a "person" within the meaning of 42 U.S.C. §1983.

*Will* at 2308. The Court held:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity. *Will* at 2309. *See also Howlett v. Rose*, 496 U.S. 356, 365, 110 S.Ct. 2430, 110 L.Ed.2d 332, 346 ("An entity with Eleventh Amendment Immunity is not a 'person' within the meaning of § 1983.")

Recognizing that premise in *Harris v. Champion*, 51 F.3rd 901, at 905-06 (10th Cir. (Okla.) (1995)), the Tenth Circuit Court of Appeals, citing *Will*, stated:

> "Neither the state, nor a governmental entity that is the arm of the state for Eleventh Amendment purposes, nor a state official who acts in his or her official capacity, is a 'person' within the meaning of §1983."

It is well settled that a suit against a person in his or her official capacity is, in fact, a suit against the entity itself. A judgment in a § 1983 suit against an official "in his official capacity" imposes liability against the entity that he represents. *Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). As the United States Supreme Court stated in *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985):

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent.". . . as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the

entity. . . . it is not a suit against the official personally, for the real party in interest is the entity. *Kentucky* at 165-66.

Similarly, in *Will, supra.,* the United States Supreme Court found that an official acting in his official capacity is not a "person" under 42 U.S.C. § 1983. The Court opined in relevant part:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . as such, is no different from a suit against the state itself. . . . we hold that neither a state nor its officials acting in their official capacities are 'persons' under § 1983. *Will* at 71.

While it may be the case that official capacity suits are permitted when the Plaintiff is seeking prospective equitable relief under the *Ex Parte Young* doctrine, that doctrine is not applicable here. Plaintiff has not asked for equitable relief, only money damages. As such, official capacity suits are improper.

Because Defendants, in their official capacity, are not "persons" subject to suit under 42 U.S.C. § 1983, there is no basis in the Complaint which would entitle Plaintiff to relief against these Defendants. Plaintiff's Complaint should be dismissed accordingly.

## PLAINTIFF HAS FAILED TO ESTABLISH A PROPERTY INTEREST AND THEREFORE HIS CLAIMS FOR VIOLATION OF DUE PROCESS UNDER THE CONSTITUTION MUST FAIL

Plaintiff has asserted that the Defendants violated his due process rights by "changing" Plaintiff's evaluation, by not having a neutral and impartial person in charge of evaluating the teachers, because of an arbitrary and capricious act and for not having sound review procedures.

None of these raise the specter of a due process because Plaintiff does not have a property interest in the items he complains about.

The requirements of due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701 (1972), *Sipes v. United States*, 744 F.2d 1418, 1420 (10th Cir.1984). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709. In determining whether a protected property interest exists, resort may be had to state statutes, general common law principles, city ordinances or rules, or any other independent source which secures certain benefits. Ultimately, the question is whether the plaintiff has a "legitimate claim of entitlement" to the benefit alleged to constitute a property interest. *Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709. A unilateral expectation of continued employment is insufficient to establish a property interest. *Martin v. United School Dist. No. 434, Osage County, Kan.*, 728 F.2d 453, 455 (10th Cir. 1984).

Oklahoma law is clear that absent some provision in state law, a non-tenured teacher has no property interest protected by the Fourteenth Amendment. *Weeks. V. Northeast Area Vo-Tech, Dist. No. 11*, 657 P.2d 1205, 1207 (Okla. Civ. App. 1982); *Wood v. Independent School Dist. No. 141*, 61 P.2d 892 (Okla. 1983) (non-tenured teacher has no substantive rights which are protected by the Fourteenth Amendment). In this matter, Plaintiff has pointed to no law, rule or regulation

which grants him any type of property right in a renewal of his contract. Plaintiff, in his complaint, makes one oblique reference to an apparently unwritten school tradition, "it is the policy and practice of the University to indeed retain individuals who receive evaluations and recommendations from the department chair..." (Complaint at ¶75). However, this is insufficient to demonstrate a mutual expectation of retention. See: *Stern v. University of Oklahoma*, 841 P.2d 1168 (Ct. Ap. 1992) (Probationary professor had no property interest in tenure even where employee handbook recites tenure criteria); See also: *Board of Education, Vici Public Schools v. Dewey*, 656 P.2d 258, 261 (Okla. 1982) (absent any oral or written agreement, a school does not bind itself to any particular employment decisions based on evaluations). Plaintiff, therefore, has no property rights in a renewal of his contract. Likewise, Because Plaintiff has no property interest in continued employment, he also has no property rights which create due process in a neutral decision maker, in sound review procedures, or in the recommendations made by a college dean in relation to an evaluation. See: *Jannsen v. Condo*, 101 F.3d 14 (2nd Cir. 1996) (no property interest in employee evaluations); *Spittal v. Piperni*, 786 F.2d 1166 (6th Cir. 1986) (Unpub.) (no cases have been found holding that a plaintiff ha a property interest in his evaluation)

## PLAINTIFF'S EQUAL PROTECTION CLAIM MUST FAIL

Plaintiff asserts an equal protection claim against the Defendants. Plaintiff asserts that person with similar levels or less scholarship qualifications than the Plaintiff were retained though Plaintiff's contract not renewed. This is an insufficient basis on which to rest a claim for an equal protection violation.

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV. It is "triggered when the government treats someone differently than another who is similarly situated." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 859 (10th Cir.1991). Courts recognize three distinct species of equal protection cases. "The common kinds are two. One involves charges of singling out members of a vulnerable group, racial or otherwise, for unequal treatment. The other, which rarely succeeds nowadays, involves challenges to laws or policies alleged to make irrational distinctions...." *Esmail v. Macrane*, 53 F.3d 176, 178 (7th Cir.1995) (citations omitted). The third kind of equal protection claim involves a situation where "the power of government is brought to bear on a harmless individual merely because a powerful state or local official harbors a malignant animosity toward him." *Id*. at 179; see also *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) ("not a denial of equal protection unless there is shown to be ... an element of intentional or purposeful discrimination"); *Buckley*, 933 F.2d at 859 (equal protection clause applicable where there is "an element of intentional or purposeful discrimination" in state procedures); *Zaintz v. City of Albuquerque*, 739 F.Supp. 1462, 1472 (D.N.M.1990) (same); *Smith v. Eastern New Mexico Med. Ctr.*, 1995 WL 749712, at *8 (10th Cir. Dec.19, 1995) (unpublished) (holding that "the Equal Protection Clause affords protection to an individual injured by intentional or purposeful discrimination ... without, identification of a class") (citation and quotation omitted).

Plaintiff contends, as the basis of his equal protection claim, that his scholarship qualifications are the same or exceed the scholarship of other professors, yet the other professors were retained and Plaintiff's contract was not renewed. [Doc. 1, ¶¶81-84].

On its face, Plaintiff's Second Complaint does not fit the traditional molds of equal protection claims. He does not allege that he was singled out as a member of a suspect class, nor does he challenge any state law or policy as making irrational distinctions. Rather the Complaint states that Plaintiff's termination was the result of intentional or purposeful decisions to not renew Plaintiff's contract. His claim thus conforms to the third type of equal protection claim, alleging that there was "'an element of intentional or purposeful discrimination' in the application of ... [state] procedures so as to invoke the clause as an individual." *Buckley*, 933 F.2d at 859 (citation omitted).

Having alleged "an element of intentional or purposeful" discrimination by Defendants, however, Plaintiff must also allege whether similarly situated individuals were treated differently. "The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." *Buckley*, 933 F.2d at 859; see also *Yerardi's Moody St. Restaurant & Lounge v. Board of Selectmen*, 878 F.2d 16, 21 (1st Cir.1989) (holding "the right to equal protection is the right not to be treated differently from those similarly situated") (citations omitted); *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir.1994). The Tenth Circuit opinion of *Smith v. Eastern New Mexico Med. Ctr.* is instructive as to this requirement. 1995 WL 749712. In *Smith*, the plaintiff-physician claimed that his equal protection rights were violated when he involuntarily left his position as vascular surgeon at

Eastern New Mexico Medical Center (ENMMC) "following a series of wrongful disciplinary actions" by the defendants that were "improper, malicious and motivated by personal animosity...." Id. at * 1. The Tenth Circuit found that the plaintiff had properly alleged an equal protection claim. Id. at *7. However, in doing so, the court engaged in "careful analysis [of the complaint] under equal protection precedents and found as 'pertinent' the detailed allegations by the plaintiff in his complaint which indicated that other doctors who engaged in conduct similar to the plaintiff were not disciplined." While concluding that "the Equal Protection Clause affords protection to an individual injured by 'intentional or purposeful discrimination,' without identification of a class" the court did not abandon Buckley's teaching that the clause "is triggered when the government treats someone differently than another who is similarly situated." *Smith*, 1995 WL 749712, at *7–8 (citations omitted). Thus, in determining that the motion to dismiss Plaintiff Smith's equal protection claim should not have been granted, the court focused on his averments that "Dr. Smith was disparately treated" from others who committed similar conduct.

In the case at bar, Plaintiff has not identified that anyone who has engaged in similar conduct has been treated any differently than the Plaintiff. Plaintiff alleges that he is a professor in legal studies who got himself involved in debates over university policy and over whether it was proper for the university to hire the new Dean's wife. Both issues, Plaintiff alleges, were not within his scope of employment. Plaintiff identifies no one who engaged in similar conduct who was permitted to keep his job. Plaintiff, instead, tries to call this Court's attention to his level of "scholarship" asserting that his scholarship is superior to others whose contracts were renewed.

This, however, is not where the Court should focus its inquiry. Rather, the proper inquiry is whether the Plaintiff identify similarly situated persons who had their contracts renewed when the Plaintiff lost his contract. Has Plaintiff identified anyone who was retained after engaging in speech similar to the Plaintiff's? Plaintiff has not identified any such persons and therefore cannot meet the necessary element of an Equal Protection claim.

## DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

In his Complaint, Plaintiff makes some unique claims. Particularly, Plaintiff asserts that his due process and/or equal protection rights have been violated because: (1) a conclusion derived from an evaluation was changed; (2) the decision to not renew Plaintiff's contract was "arbitrary and capricious"; (3) that Plaintiff was entitled to a neutral and detached decision maker when it comes to his employment; and (4) that Plaintiff is entitled to a "transparent" review process. While all of these sound nice, they are not supported in the law. At the very least, these are not clearly established and the Defendants are entitled to qualified immunity.

There are two types of immunities which government officials may assert against the charges in a civil lawsuit. The first type of immunity is absolute immunity. Absolute immunity arises when a government official has immunity from suit no matter how egregious the act that the official is alleged to have taken. See e.g.: *Imbler v. Pachtman*, 424 U.S. 409 (1976). This is based on the proposition that certain government officials must be free to act, absolutely, without concern about being sued over their actions as this concern would necessarily hamper the official in his duties. See e.g.: *Pierson v. Ray*, 386 U.S. 547, 554-555, 87 S.Ct. 1213, 1217-1218, 18 L.Ed.2d 288 (1967).

The second type of immunity, which is no less important, is qualified immunity. Under the doctrine of qualified immunity a state official maintains immunity from suit unless he violates a person's rights in the face of well clearly established law that would put the official on notice that he is violating a civil right. *Finn v. New Mexico*, 249 F.3d 1241 (10th Cir. 2001). Once a state official asserts qualified immunity, the Plaintiff carries the burden of proving that (1) a constitutional right was violated and (2) that the contours of the law alleged to have been violated were sufficiently clear at the time of the official's acts. *Callahan v. Millard County* 494 F.3d 891 (10th Cir. 1997); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir.2009). In order for a law to be clearly established, either the Supreme Court or the Tenth Circuit must have decided a matter sufficiently similar to put the state official on notice of the contours of the law. *Callahan v. Millard County*, 494 F.3d 891 (10th Cir. 2007); *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999). A general statement of a broad proposition of law is insufficient in most instances. *Callahan* at 895. Generally a statement of the law must be close enough to the facts of the matter at bar to give notice to the official. *Melton v. City of Oklahoma City*, 879 F.2d 706 (10th Cir. 1898).

Qualified immunity protects all but the most incompetent state officials. *Medina v. Cramm*, 252 F.3d 1124, 1127 (10th Cir. 2001). Unless the state official violates a constitutional right in a way that the official knows or should know that is a violation, then qualified immunity attaches and the official cannot be held individually liable. *Id*. This proposition serves the same purpose as does absolute immunity: the official must be free to make reasonable decisions without fear of civil liability. Although not as broad as absolute immunity, by ensuring that an

official is only liable when he knowingly violates a person's rights, the official is free to fulfil his governmental responsibilities without fear of a retributive lawsuit.

What constitutes "clearly established" has been the source of much discussion in case law. What is well established is that there must be a Supreme Court or Tenth Circuit decision clearly establishing a point of law or clearly established weight of authority from other circuits clearly establishing a point of law. *Callahan v. Millard County*, 494 F.3d 891 (10th Cir. 2007). A broad statement of a general proposition is usually not enough to make a law clearly established, the contours of the law must be clearly established in light of the factual situation faced by the Defendant. *Anderson v. Creighton*, 483 U.S. 635, 639-640, 107 S.Ct. 3034, 3039. The law must be established clearly enough that any reasonable state official would understand that an act he or she is taking is volative of a person's rights. *Id.* The burden is on the Plaintiff to demonstrate that the unlawfulness of the Defendant's conduct was **apparent**. *Callahan* at 898.

Most recently, in *Ashcroft v. Al Kidd*, 131 S.Ct, 2074 (2011) the Supreme Court stated that in order for a law to be clearly established, "...existing precedent must have placed the statutory or constitutional provision **beyond debate**." (emphasis added). Though the Court of Appeals had found clearly established law lurking in the broad "history and purposes of the Fourth Amendment." "We have repeatedly told courts - and the Ninth Circuit in particular - not to define clearly established law at a high level of generality. The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established. (Citations omitted).

14

As shown above, Plaintiff has no property interest in his continued employment nor in the manner in which his employment is evaluated. Therefore, there is no due process or equal protection violation. Furthermore, there is no case law demonstrating that Plaintiff has a due process right in the items complained of, nor is there any case law demonstrating that it is an equal protection violation to not provide a neutral and detached decision maker, to not have transparent review procedures, or to not have a different conclusion drawn from an employee evaluation. Plaintiff simply manufactures these rights out of thin air. Even after some debate and discussion if it was determined that any of these rights might exist, they are not clearly established. The Defendants are entitled to qualified immunity on the Plaintiff's claims of due process and equal protection violations.

## CONCLUSION

WHEREFORE, Defendants pray that this Honorable Court sustain their Motion to Dismiss and award any other relief that the Court believes to be just and equitable.

Respectfully submitted,


s/ M. Daniel Weitman
M. DANIEL WEITMAN, OBA # 17412
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 N. E. 21st Street
Oklahoma City, Oklahoma  73105
Tele: (405) 521-3921  Fax: (405) 521-4518
Dan.Weitman@oag.ok.gov
*Attorney for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2013, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

McLaine DeWitt Herndon



s/ M. Daniel Weitman
M. Daniel Weitman