# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAVID P. MADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-13-0393-HE |
| | ) | |
| REGIONAL UNIVERSITY SYSTEM, | ) | |
| OF OKLAHOMA, a State of Oklahoma | ) | |
| constitutionally created governing | ) | |
| board; NORTHEASTERN STATE | ) | |
| UNIVERSITY, a public university; | ) | |
| CARI KELLER, an individual (in her | ) | |
| individual and official capacity); | ) | |
| PHILLIP BRIDGMON, an individual | ) | |
| (in his individual and official capacity), | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff David Madden filed this § 1983 action against defendants Regional University System of Oklahoma ("RUSO"), Northeastern State University ("NSU"), and Cari Keller and Phillip Bridgmon, both individually and in their official capacities, for alleged violations of various constitutional rights relating to the decision to not renew his contract for the 2013-2014 academic year. Defendants have filed a motion to dismiss arguing that they are protected by Eleventh Amendment and qualified immunity, and that the complaint fails to state claims for violations of equal protection or due process.

Rule12(b)(6) permits a court to dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and construed in the light

1

most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). Unsupported, conclusory allegations, however, need not be accepted as true. *See* Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Applying that standard, the court concludes the defendants' motion to dismiss should be granted.

## **Background**

The following description of background facts is based on the allegations of the complaint, which, for purposes of this motion, the court assumes to be true.

Between 2008 and 2013, the plaintiff was employed as a professor in the Criminal Justice and Legal Studies Program at Northeastern State University. During that period he consistently received satisfactory or above satisfactory reviews from his superiors, and was committed to improving the teaching and scholarship quality of his program. In 2009, the plaintif's employment changed from adjunct professor to full time, tenure track assistant professor.

In March 2012, the plaintiff was asked by a colleague, Dr. Brad Agnew, to interpret NSU's anti-nepotism policy. The conversation was prompted by Dr. Agnew's concern that the Political Science Department hiring committee might be pressured to hire the wife of the incoming Dean, defendant Phillip Bridgmon, for a position in that department. After review, the plaintiff concluded that the hire would indeed violate the school's anti-nepotism policy, and he communicated that finding to Dr. Agnew.

2

On February 11, 2013, the plaintiff met with defendant Cari Keller, the chair of the Criminal Justice and Legal Studies Department, for his annual evaluation. The plaintiff again received at least satisfactory evaluations in all areas. Ms. Keller recommended that the plaintiff be retained for the 2013-2014 school year.

At some point over the next week, Ms. Keller learned of the plaintiff's interpretation of the university's anti-nepotism policy. Through email and in-person conversations, she informed the plaintiff that Dean Bridgmon and the chair of the Social Sciences Department had conversations with Ms. Keller about the plaintiff's anti-nepotism policy interpretation. In these conversations, the plaintiff apparently received some form of unofficial reprimand from Ms. Keller.

On February 27, 2013, the plaintiff was summoned to Dean Bridgmon's office where he was informed that the university would not retain him for the upcoming school year. Although the university stated that the plaintiff was not kept because of "failure to meet scholarship requirements" and "non-collegiality," the plaintiff argues that these were merely pretext to cover up the real reason for his firing—his interpretation and discussion of the university's anti-nepotism policy in regard to the Dean's wife.

In this § 1983 action, plaintiff alleges that the defendants violated his First Amendment right to free speech and his due process and equal protection rights.

## Claims against RUSO and NSU

Defendants argue that RUSO and NSU are protected by Eleventh Amendment

immunity and the court agrees. Because the plaintiff has requested only monetary damages,[1] any claim against the State of Oklahoma or an arm or agency of the state is barred. Quern v. Jordan, 440 U.S. 332, 342 (1979). Both RUSO and NSU are arms of the state, and thus are immune from claims for monetary damages.

Plaintiff asserts that RUSO is less like a state agency and more like a municipality, which is not protected by the Eleventh Amendment. Unfortunately for the plaintiff, both the Tenth Circuit and the Oklahoma Supreme Court have already spoken on this issue, and both determined that boards of regents are state entities protected by the Eleventh Amendment. *See* Seibert v. State of Okla. *ex rel.* Univ. of Okla. Health Scis. Ctr., 867 F.2d 591, 594 (10th Cir. 1989), *abrogated by* Fed. Lands Legal Consortium *ex rel* Robart Estate v. U.S., 195 F.3d 1190 (10th Cir. 1999); Gay Activists Alliance v. Bd. of Regents of the Univ. of Okla., 638 P.2d 1116, 1123-24 (Okla. 1981).

Plaintiff, aware of Seibert, asks the court to reconsider RUSO's relationship with the state, taking into account various factors including legislative intent and RUSO's powers compared to those of counties and municipalities. Plantiff's Response [Doc. # 10 at 11]. The court is thoroughly unpersuaded by plaintiff's argument, but it is unnecessary to belabor the point. The relationship between a public entity and a state is determined by state law, and where a state supreme court has already interpreted its constitution or statutes in reference

---

[1]*Although the complaint makes passing reference to "other injunctive and equitable relief," it does not specifically seek plaintiff's reinstatement, and plaintiff does not appear to challenge defendants' assertion that equitable relief under Ex Parte Young is not sought.*

4

to that relationship, the state court's interpretation controls. *See* Korgich v. Regents of N.M. School of Mines, 582 F.2d 549, 551 (10th Cir. 1978) ("In determining whether an action brought against a governmental institution is actually a suit against the state within the meaning of the Eleventh Amendment, state law is decisive."). It is clear that the Oklahoma Supreme Court considers boards of regents and the universities they govern to be arms of the state, and it is not for this court to reexamine that decision.[2] The motion to dismiss will be granted as to the claims against RUSO and NSU.

### Claims against Mr. Bridgmon and Ms. Keller in their official capacities

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted). Defendants Bridgmon and Keller are employees of RUSO and NSU, which are arms of the state. As state employees, they are entitled to Eleventh Amendment immunity as to the claims against them in their official capacities. The motion to dismiss the claims against Mr. Bridgmon and Ms. Keller in their official capacities will be granted.

### Equal protection and due process claim against Mr. Bridgmon and Ms. Keller in their individual capacities

The due process and equal protection claims against Bridgmon and Keller in their

---

[2]*Plaintiff also asserts that 70 O.S. § 3510(n) waives RUSO's Eleventh Amendment immunity. However, Eleventh Amendment immunity must be explicitly waived, and a general provision allowing an agency to sue or be sued does not amount to such a waiver. See* Edelman v. Jordan, *415 U.S. 651 (1974).*

5

individual capacities are challenged on two grounds. Defendants assert the complaint does not state a plausible claim as to them and that, in any event, they are protected by the defense of qualified immunity. It is unnecessary to reach the qualified immunity issue, as the court concludes due process and equal protection claims have not been stated.

As to the equal protection claim, the plaintiff asserts that he is a "class-of-one" and was treated differently from others similarly situated. Plaintiff's Surreply [Doc. #15 at 6]. However, the Supreme Court has held that class-of-one equal protection claims do not arise in the public employment setting. Engquist v. Or. Dep't of Agric., 553 U.S. 591, 605 (2008). RUSO and NSU are public employers, and as such, a class-of-one equal protection claim is not available against them.

In order to state a claim for violation of due process, the plaintiff must show that he has been deprived of a liberty or property interest. *See* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). Plaintiff does not claim a deprivation of a liberty interest, so the only question is whether he has alleged a basis for concluding he had a recognized property interest in his continued employment. The court concludes that he has not alleged such a basis.

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth at 577. In Oklahoma, untenured professors do not have a protected property interest in their continued employment unless otherwise provided in an employee handbook.

*See* Stern v. Univ. of Okla. Bd. Of Regents, 841 P.2d 1168, 1171 (Okla. Civ. App. 1992). Here, the complaint provides no basis for concluding plaintiff was other than a non-tenured professor.[3]

Likewise, the complaint does not allege a basis for concluding a property interest was created by Keller's evaluation of plaintiff. Although the end result of the evaluation was a recommendation for future employment, there is no apparent basis for concluding it was anything other than just that—a recommendation. By its very nature, a recommendation can either be followed or ignored by the person with the ultimate decision-making power. There is nothing in the complaint to suggest that Keller was that person. Any expectation that the plaintiff had following his evaluation was unilateral, and such expectations do not create a protected property interest. The Oklahoma Supreme Court, applying Roth, held that absent a state statute or institutional policy or practice, untenured faculty are not entitled to due process, even where there is an evaluation process in place. Bd. of Educ., Vici Public School v. Morris, 656 P.2d 258, 262 (Okla. 1982). The defendants' motion to dismiss the equal protection and due process claim will be granted.

For the reasons stated, defendants' motion to dismiss [Doc. #9] is **GRANTED**. All claims against the Regional University System of Oklahoma, Northeastern State University, and against Cari Keller and Phillip Bridgmon, in their official capacities, are **DISMISSED**. The due process and equal protection claims against Cari Keller and Phillip Bridgmon, in

---

[3]*The complaint alleges he held a "tenure track" position, which suggests he could be considered for tenure, not that he actually had tenured status.*

their individual capacities, are also **DISMISSED**. Plaintiff is granted leave to file, within **fourteen (14) days**, an amended complaint as to the dismissed claims if he elects to do so. Absent amendment, only plaintiff's First Amendment claims against Keller and Bridgmon in their individual capacities remain for resolution.

    **IT IS SO ORDERED**.

    Dated this 11th day of September, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE