# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID P. MADDEN, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | NO. CIV-13-0393-HE |
| ) | |
| REGIONAL UNIVERSITY SYSTEM, ) | |
| OF OKLAHOMA, a State of Oklahoma ) | |
| constitutionally created governing ) | |
| board; NORTHEASTERN STATE ) | |
| UNIVERSITY, a public university; ) | |
| CARI KELLER, an individual (in her ) | |
| individual and official capacity); ) | |
| PHILLIP BRIDGMON, an individual ) | |
| (in his individual and official capacity), ) | |
| ) | |
| Defendants. ) | |

## ORDER

Plaintiff David Madden filed this § 1983 action against defendants Regional University System of Oklahoma ("RUSO"), Northeastern State University ("NSU"), and Cari Keller and Phillip Bridgmon, both individually and in their official capacities. He alleges various constitutional violations arising out of the non-renewal of his contract for the 2013-2014 academic year. In a previous order [Doc. #16], the court dismissed all claims against RUSO and NSU, and all claims against Keller and Bridgmon in their official capacities. It also dismissed the due process and equal protection claims against Keller and Bridgmon in their individual capacities. Plaintiff has filed an amended complaint [Doc. #18] which, with some additional detail, substantially re-alleges the same claims as his initial complaint. Defendants have again moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6).

1

Plaintiff has responded, and the motion is at issue.

Rule 12(b)(6) permits a court to dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and construed in the light most favorable to the nonmoving party. Peterson v. Grisham, 594 F.3d 723, 727 (10th Cir. 2010). Unsupported, conclusory allegations, however, need not be accepted as true. *See* Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011). The question is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Applying that standard, the court concludes the defendants' motion to dismiss should be granted.

## Discussion

The background facts, as alleged by plaintiff, were summarized in the court's prior order and will not be repeated here. In the amended complaint, plaintiff continues to assert the same claims as in the original complaint, but acknowledges that some have been disposed of by the prior order. His amended complaint is principally directed to providing additional detail as to, and reasserting, his previously dismissed due process claims against Keller and Bridgmon in their individual capacities.[1] [Doc. #23, pg. 4].

In its previous order, the court dismissed plaintiff's due process claims because he had

---

[1]*Plaintiff also asserts First Amendment claims against Keller and Bridgmon in their individual capacities. Those claims are not addressed by the present motion and remain for adjudication.*

2

not alleged a basis for concluding he had a recognized property interest in continued employment. Specifically, the court concluded plaintiff's unilateral expectation that Keller's recommendation for him to be retained for the following year did not create a property interest in further employment. [Doc. #16, pg. 6-7]. In his amended complaint, plaintiff alleges that NSU had a practice or policy of retaining all professors who were recommended for retention. That policy, he argues, created a property interest in future employment when Keller recommended him for retention. Plaintiff further alleges that he had a liberty interest at stake because he was fired in retaliation for exercising his First Amendment rights. He argues that, because he had both a property and liberty interest at stake, his due process rights were violated when Keller and/or Bridgmon changed the initial decision and did not rehire plaintiff for the following school year.[2] Defendants argue that the due process claims should be dismissed because plaintiff has still not alleged a basis for a protected interest in his continued employment, because he has failed to show that he was denied an opportunity to be heard, and because Keller and Bridgmon are entitled to qualified immunity.

In order to state a claim for violation of due process rights, the plaintiff must show that he has been deprived of a liberty or property interest. *See* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972). The question is whether the complaint alleges a basis for concluding plaintiff had a recognized property interest in his continued employment or a

---

[2]*Plaintiff alleges a number of ways in which his due process rights were violated, including denial of a pre-decisional hearing, the use of arbitrary and capricious evaluative standards, the absence of a neutral decision maker, and others. It is unnecessary to analyze those specific arguments, as plaintiff does not allege a basis for showing the underlying protected interest upon which a due process violation might be based.*

liberty interest tied to his exercise of First Amendment rights. The court concludes the necessary basis has not been alleged.

Plaintiff argues that his due process rights were violated because he was fired in retaliation for communicating his belief that hiring Bridgmon's wife as a political science professor would violate NSU's nepotism policy. His argument is based on language in Weeks v. Ne. Okla. Area Vocational-Technical Sch., Dist. No. 11, 657 P.2d 1205 (Okla. Civ. App. 1982). Citing Roth, the Weeks court said "the United States Supreme Court held that the decision not to rehire a non-tenured instructor would not deprive him of an interest in liberty unless it was in retaliation for the instructor's exercise of constitutional rights." *Id.* at 1207. Plaintiff's reliance on that broad, general statement does not support his position here, however, because the specific violation he alleges is one that Roth, and its companion case Perry, specifically indicated does not implicate a liberty interest. *See* Perry v. Sindermann, 408 U.S. 593, 599, fn. 5 (1972) ("The Court of Appeals suggested that the respondent might have a due process right to some kind of hearing simply if he asserts to college officials that their decision was based on his constitutionally protected conduct. We have rejected this approach in [Roth].") (internal citation omitted) (citing Roth, 408 U.S at 575 n. 14). The Roth Court explained that depriving an individual of his First Amendment rights may implicate a liberty interest that would necessitate due process protections under certain circumstances, such as a large-scale seizure of books or before issuing an injunction against holding meetings. Roth, 408 U.S at 575 n. 14. "[N]on-retention decisions improperly motivated by exercise of protected rights," however, do not rise to the same level.

4

*Id.* The complaint therefore does not allege facts sufficient to invoke a liberty interest upon which a due process claim can be based.

Plaintiff also argues he had a property interest in future employment once Keller recommended him to be retained for the following school year. [Doc. #27, pg. 2-3]. He asserts that he had an implied promise of continued employment once Keller made her recommendation because NSU had a policy or practice of always rehiring professors who received positive evaluations. According to plaintiff, Keller's recommendation was, in practice, the final decision of the university. That implied promise, he says, created a property interest that entitled him to due process when the retention decision was later changed. *See* Roth, 408 U.S. at 578 (holding that plaintiff did not have a property interest because he could not point to "any state statute or University *rule or policy* that secured his interest in re-employment or that created any legitimate claim to it." (emphasis added)); *see also* Perry, 408 U.S. at 602-03 (1972) ("[R]espondent has alleged the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment . . . .").

Many of the allegations added in the amended complaint in relation to the due process claim are conclusory and inconsistent with the underlying documents which the complaint purports to characterize. However, it is unnecessary to parse the particular allegations, as Oklahoma law indicates the absence of a property interest in any event. Whether plaintiff had a "'legitimate claim of entitlement' in the state university tenure setting is defined solely through the application of state contract and employment law." Jones v. Univ. of Cent.

Okla., 13 F.3d 361, 365 (10th Cir. 1993). Plaintiff could not have had a property interest in future employment because in Oklahoma "an implied agreement cannot coexist with [an] express contract." Jones v. Univ. of Cent. Okla., 910 P.2d 987, 991 (Okla. 1995). In Jones, the Oklahoma Supreme Court answered a certified question from this court, and explained that "where a written formal tenure policy exists, and the court finds that policy constitutes an express contract, a university professor cannot have legitimate claim to tenure pursuant to an informal, unwritten tenure policy." *Id.*

Although Jones dealt with a refusal to grant tenure and this case deals with the non-retention of a non-tenured professor, the underlying reasoning is still applicable. The complaint alleges the existence of the NSU employee handbook, which governed the terms of plaintiff's employment. The portions of the handbook referenced in the complaint expressly set out the retention process for non-tenured or tenure-track appointments, and grant the university president or his/her designee the ultimate power to determine whether a tenure-track professor will be retained. The handbook states: "Tenure-track appointments are for one (1) year, renewable annually at the option of the University." Handbook at 3.2.2.b1. "Non-tenured faculty members are appointed on an annual basis . . . The performance of non-tenured faculty members shall be evaluated by the retention/mentoring committee, the department chair, and the college dean . . . ." *Id.* at 3.3.1. "To be *recommended* for retention, candidates shall demonstrate evidence of progress towards tenure commensurate with departmental expectations." *Id*. at 3.3.1.b (emphasis added). "The Board delegates to the University president or his or her designees the authority to reappoint or not

to reappoint non-tenured faculty members." *Id.* at 3.3.1.c. "Failure to reappoint may be without specific or stated causes." *Id.*

The complaint alleges no basis for concluding other than that the NSU handbook was part of the express contract which governed plaintiff's employment. As such, under Oklahoma law, plaintiff could not have had a different implied contract covering the same subject matter, based on custom and practice. *See* Jones, 910 P.2d at 990-91.[3] He therefore does not allege a basis for a property interest in future employment such as would support a constitutional due process claim.

Even if the court's conclusion as to the existence of a constitutionally protected interest in continued employment was otherwise, it would, in any event, likely dismiss the individual capacity due process claims against Keller and Bridgmon on the basis of qualified immunity. Given plaintiff's non-tenured status, the law in Oklahoma as referenced above, and the provisions of the university handbook, it is difficult to see how plaintiff's entitlement to due process protections in this context could be seen as being "clearly established."[4] However, in light of the courts ruling as to the basis for the substantive claim, it is unnecessary to definitively resolve the question of whether qualified immunity might also

---

[3]*The complaint does not allege any basis for an agreement to retain him based on a contract implied in fact, i.e. that he was specifically promised retention notwithstanding the handbook, or anything of similar import.*

[4]*"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."* Harlow v. Fitzgerald, *457 U.S. 800, 818 (1982).*

7

apply.

For the reasons stated, defendants' motion to dismiss [Doc. #21] is **GRANTED**. All claims against the Regional University System of Oklahoma, Northeastern State University, and against Cari Keller and Phillip Bridgmon, in their official capacities, are **DISMISSED**. The due process and equal protection claims against Cari Keller and Phillip Bridgmon, in their individual capacities, are also **DISMISSED**. Plaintiff's First Amendment claims against Keller and Bridgmon, in their individual capacities, remain for resolution.

**IT IS SO ORDERED**.

Dated this 14th day of February, 2014.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE